IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**MICHELE L. B.,**

   **Plaintiff,**

v.                     No. 1:23-cv-33 KRS

**MARTIN O'MALLEY,**[1] **Acting Commissioner,**
**Social Security Administration,**

   **Defendant.**

### MEMORANDUM OPINION AND ORDER

   THIS MATTER is before the Court upon Plaintiff Michele L. B.'s ("Plaintiff") Motion for Reversal and Remand for further Proceedings ("Motion") (Doc. 17), dated June 7, 2023, challenging the determination of the Commissioner of the Social Security Administration ("Defendant" or "Commissioner") that Plaintiff is not entitled to disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401–34. With the consent of the parties to conduct dispositive proceedings in this matter, *see* 28 U.S.C. § 636(c); FED. R. CIV. P. 73(b), the Court has considered the parties' filings and has thoroughly reviewed the administrative record. Having done so, the Court concludes that the Administrative Law Judge ("ALJ") did not err in her decision and will therefore **DENY** Plaintiff's Motion and **AFFIRM** the judgment of the Commissioner.

**I.  PROCEDURAL POSTURE**

   On March 12, 2020, Plaintiff filed an initial application for DIB with an alleged onset date of July 20, 2019.[2] (*See* Administrative Record ("AR") at 15). Plaintiff alleged she was disabled due to osteoarthritis of the bilateral hips with avascular necrosis, status-post bilateral hip

---

[1] Martin O'Malley became the Acting Commissioner of the Social Security Administration on December 20, 2023, and is automatically substituted as the defendant in this action. FED. R. CIV. P. 25(d).

[2] Document 11 is the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page. Notably, multiple documents in the Administrative Record state Plaintiff's filing date as March 11, 2020, or March 12, 2020. The Court utilizes March 12, 2020, as the respective date for purposes of this Memorandum, Opinion, and Order.

replacements, degenerative disc disease of the lumbar spine, obesity, depression, and anxiety. (*Id.* at 18).[3] Plaintiff's date last insured, the date through which she could be eligible to receive disability insurance benefits is, December 31, 2024.[4] (*Id.* at 17, 19). Plaintiff's application was denied at the initial level on November 3, 2020 (*id.* at 15, 99), and upon reconsideration on June 16, 2021 (*id.* at 15, 108). Plaintiff requested a hearing on June 22, 2021, (*id.* at 127–28), which ALJ Marjorie Panter ("ALJ Panter" or the "ALJ") conducted telephonically on March 7, 2022 (*id.* at 47–85). Plaintiff was represented by a non-attorney and testified at the hearing (*id.* at 15, 49–75), as did vocational expert Clifton King ("VE") (*id.* at 75–84).

On April 4, 2022, ALJ Panter issued an unfavorable decision. (*Id.* at 12–46). Plaintiff sought review from the Appeals Council, (*id.* at 7–11), which denied review on November 23, 2022, (*id.* at 1–6), thus making the ALJ's decision the final decision of the Commissioner. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). On January 12, 2023, Plaintiff filed suit in this Court, seeking review and reversal of the ALJ's decision. (Doc. 1). On June 7, 2023, Plaintiff filed the instant Motion. (*See* Doc. 17). The Commissioner responded to Plaintiff's Motion on September 5, 2023 (Doc. 24), and Plaintiff filed a reply (Doc. 25).[5]

## II.   LEGAL STANDARDS

### A.   Standard of Review

Judicial review of the Commissioner's decision is limited to determining "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) (citing *Lax v. Astrue*, 489 F.3d

---

[3] On her March 26, 2020, Disability Report - Adult, Plaintiff listed "Dislocated [d]isk, [R]heumatoid arthritis in hips and back, and Depression" as her alleged physical and mental conditions. (AR 213). In her December 8, 2020, and June 28, 2021, Disability Reports - Appeal, Plaintiff alleged that her medical conditions had not changed since March 26, 2020. (*Id.* at 252, 281). Plaintiff's Disability Reports do not include status-post bilateral hip replacements, degenerative disc disease of the lumbar spine, obesity, or anxiety as purported physical and mental conditions. (*Id.* at 213, 252, 281). Neither party addresses this discrepancy and, the Court need not resolve the discrepancy for purposes of this Memorandum Opinion and Order.

[4] In order to qualify for disability insurance benefits, a claimant must establish that they met the statutory requirements for disability on or before their date last insured. *See Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010). The Court includes the date last insured as recited by the ALJ in her April 4, 2022, decision. (AR at 18).

[5] Plaintiff did not file a Notice of Completion per D.N.M.LR-Civ.7.4(e). The Court, *sua sponte*, finds the Motion is ripe as the last filing in relation to the Motion was September 19, 2023, and Plaintiff has not requested leave of the Court to file a sureply.

1080, 1084 (10th Cir. 2007)); *see also* 42 U.S.C. § 405(g). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *See, e.g.*, *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Although a court must meticulously review the entire record, it "may neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]." *See, e.g.*, *id.* (quotation omitted).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted); *Langley*, 373 F.3d at 1118 (quotation omitted). Although this threshold is "not high," evidence is not substantial if it is "a mere scintilla," *Biestek*, 139 S. Ct. at 1154 (quotation omitted); "if it is overwhelmed by other evidence in the record[,]" *Langley*, 373 F.3d at 1118 (quotation omitted); or if it "constitutes mere conclusion[,]" *Grogan v. Barnhart*, 399 F.3d 1257, 1261–62 (10th Cir. 2005) (quotation omitted). Thus, the Court must examine the record as a whole, "including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." (*Id.* at 1262 (citation omitted)). While an ALJ need not discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence," *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996) (citation omitted), and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." (*Id.* at 1010 (quotation omitted)). "Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quotation and citation omitted).

**B.     Disability Framework**

"Disability," as defined by the Social Security Act, is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The Social Security

3

Administration ("SSA") devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *Wall v. Astrue*, 561 F.3d 1048, 1051–52 (10th Cir. 2009); 20 C.F.R. § 404.1520. If a finding of disability or non-disability is directed at any point, the Commissioner will not proceed through the remaining steps. *Thomas*, 540 U.S. at 24; 20 C.F.R. § 404.1520(a)(4).

At the first four steps of the analysis, the claimant has the burden to show: (1) he is not engaged in "substantial gainful activity"; (2) he has "a severe medically determinable physical or mental impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and that either (3) his impairment(s) meets or equals one of the "Listings" of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." *Id.* § 404.1520(a)(4)(i–iv) (citing *id.* § 404.1509); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

Step four of this analysis consists of three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ determines the claimant's residual functional capacity ("RFC") "based on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). A claimant's RFC is "the most [he] can still do despite [physical and mental] limitations." *Id.* § 404.1545(a)(1). Second, the ALJ "determine[s] the physical and mental demands of the claimant's past relevant work." *Winfrey*, 92 F.3d at 1023. "To make the necessary findings, the ALJ must obtain adequate 'factual information about those work demands which have a bearing on the medically established limitations.'" *Id.* at 1024 (quoting Social Security Ruling (SSR) 82-62, 1982 WL 31386, at *3 (Jan. 1, 1982)). Third, the ALJ determines whether, in light of the RFC, the claimant is capable of meeting those demands. *Id.* at 1023, 1025.

The claimant must prove that, based on her RFC, she is unable to perform the work she has done in the past. *See Thomas*, 540 U.S. at 25. If the claimant meets "the burden of establishing a *prima facie* case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that" the claimant retains sufficient RFC "to perform work in the national economy, given his age, education and work experience." *Grogan*, 399 F.3d at 1261 (citation omitted); *see also*

4

*Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

### III.   THE ALJ'S DETERMINATION

On April 4, 2022, ALJ Panter issued a decision denying Plaintiff's application for DIB. (*Id.* at 12–46). In denying Plaintiff's application, the ALJ applied the five-step sequential analysis. (AR at 18–41). First, ALJ Panter found that Plaintiff met the SSA's insured status requirements through the relevant period and had not engaged in substantial gainful activity since her alleged onset date of July 20, 2019. (*Id.* at 18). The ALJ then found at step two that Plaintiff suffered from non-severe impairments[6] as well as the following severe impairments: "degenerative joint disease of the right hip, osteoarthritis of the bilateral hips with avascular necrosis, status-post bilateral hip replacements, degenerative disc disease of the lumbar spine, obesity, depression, and anxiety." (*Id.*). At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met the criteria of listed impairments under Appendix 1 of the SSA's regulations. (*Id.* at 20–25).

The ALJ next determined that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. 416.967(b) with the following limitations: "[Plaintiff] is able to stand and/or walk for four hours in an eight-hour workday. [Plaintiff] occasionally is able to climb ramps or stairs. She never should climb ladders, ropes, or scaffolds. She occasionally is able to balance, stoop, kneel, crouch, and crawl.[7] (*Id.* at 26, *see also* 40–41). The ALJ further concluded that Plaintiff's "mental impairments may interfere with attention, concentration, and focus," which "could cause her to be off task up to, but less than, 10 percent of time during a workday." (*Id.* at 41, *see also id.* at 26). In determining Plaintiff's RFC, the ALJ extensively reviewed the evidence of record, including

---

[6] ALJ Panter discussed Plaintiff's impairments of varicose veins of the bilateral legs, obstructive sleep apnea, as well as rheumatoid arthritis in Plaintiff's hips and back, and determined they were non-severe or not a medically determinable impairment. (AR at 20). Plaintiff does not challenge the ALJ's conclusions, *see* Doc. 18, and thus waived her right to appeal the ALJ's decision as to these conclusions, *Anderson v. United States DOL*, 422 F.3d 1155, 1174, 1182 n.51.

[7] As Plaintiff does not object to the ALJ's findings regarding her physical limitations, those findings and medical records will not be addressed in this Memorandum Opinion and Order.

medical opinions and evidence from treating and consulting providers, prior administrative medical findings, and Plaintiff's own subjective symptom evidence. (*Id.* at 18–26). Plaintiff stated her anxiety caused "significant stress" and described her symptoms as "restlessness, being easily fatigued, difficulty concentrating, irritability, muscle tension, and sleep disturbance." (AR at 28 (citing AR at 355); AR at 30 (citing AR at 1182–83)). Plaintiff detailed her depression symptoms as "diminished interest or pleasure in activities, significant weight loss, insomnia, psychomotor agitation or retardation, feelings of worthlessness, diminished ability to think or concentrate, and recurrent thoughts of death." (AR at 30 (citing AR at 1182–83)). In assessing the evidence of record, the ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms. (*Id.* at 38). She held, however, that Plaintiff's statements about the "intensity, persistence, and limiting effects" of her symptoms were "not entirely consistent" with the medical evidence and other evidence in the record. (*Id.*)

The medical record shows Plaintiff reported psychological symptoms, as noted above, from her mental impairments. Despite these reports, however, Plaintiff's examinations generally painted a different picture. Specifically, ALJ Panter made the following findings:

- In September 2019, nurse practitioner Carmela Mondragon, CNP ("CNP Mondragon") observed Plaintiff was alert and oriented, "mood and affect were normal," thought content was normal. (AR at 23–24 (citing AR at 355–56));

- In September 2019, psychologist Sergio Naranjo, Psy.D. ("Dr. Naranjo") noted Plaintiff was "alert and oriented," "cooperative, made good eye contact[,]" affect was "non-labile, constricted, dysphoric, and congruent," attention was grossly intact, thought process was logical and linear, and thought content normal. (AR at 23–24 (citing AR at 366, 429)). Plaintiff further appeared well groomed. (AR at 25 (citing AR at 366, 424);

- In October 2019, Dr. Naranjo reported Plaintiff was "alert and oriented," "memory was intact," mood was "anxious," she was cooperative, affect was "non-labile, broad, anxious, and congruent with [Plaintiff's] reported mood," attention was intact and thought content was normal. (AR at 23–24 (citing AR at 374, 424)). Again, she was well groomed. (AR at 25 (citing AR at 374,

6

429));

- From March 2020 to January 2022, John King, Ph.D. ("Dr. King"), Plaintiff's treating psychologist, remarked Plaintiff's "memory was intact and [] she was alert and oriented." (AR at 23 (citing AR at 924, 1048–49, 1064–65, 1072–73, 1080–81, 1096–97, 1112–13, 1120–21, 1144–45, 1152–53, 1160–61, 1184–85)). Plaintiff's "thought content was unremarkable" and "her thought process was organized." (AR at 24 (citing AR at 1048, 1064, 1072, 1080, 1096, 1112, 1120, 1144, 1152, 1160, 1184)). Plaintiff's mood ranged from: (1) anxious (March 10, 2020) (AR at 24 (citing AR at 1184)); (2) happy (May 6, 2020) (*id.* (citing AR at 1160)); (3) confused (May 27, 2020) (*id.* (citing AR at 1152)); (4) anxious (June 24, 2020) (*id.* (*citing* AR at 1144)); (5) anxious and grumpy but made good eye contact and was cooperative (September 29, 2020) (*id.* (citing AR at 1120–21)); (6) "manageable" and her mood improved with reduced pain (October 27, 2020) (*id.* (citing AR at 1112-13)); (7) "happy and peaceful" (December 22, 2020) (*id.* (*citing* AR at 1096)); (8) moderately happy (May 11, 2021) (*id.* (citing AR at 1072)); (9) Plaintiff stated she was peaceful (January 18, 2021) (*id.* (citing AR at 1048)). Dr. King further noted that, on one hand, Plaintiff reported her mood improved with pain management (*id.* (citing AR at 1049 (January 18, 2022), 1073 (May 11, 2021), 1097 (December 22, 2020)), and, on the other hand, her depression and anxiety increased with pain (*id.* (citing AR at 1065 (July 20, 2021), 1081 (March 16, 2021)). Dr. King further observed that Plaintiff's appearance was "appropriate" and she had "good insight and judgment" at each appointment, (*id.* (citing AR at 1048, 1064, 1072, 1080, 1096, 1112, 1120, 1144, 1152, 1160, 1184)).

- Plaintiff also made the following statements in her April 23, 2021, Adult Function Report: (1) she could pay her bills, count change, use a checkbook/money orders, and handle a savings account, (AR at 23 (citing AR at 262)); (2) she had difficulty comprehending, would have to reread written instructions, and spoken instructions needed to be repeated a couple times, (*id.* (citing AR at 264)); (3) she would sit on her porch daily, drive a car, ride in a car, go out alone, but her children would handle the household shopping. (*id.* (citing AR at 262)); (4) she spent time with her family daily and spoke to her sister on the phone two to three times per week, (*id.* (citing

7

AR at 263)); (5) she could conduct some household chores (make the bed, do dishes, and laundry) if she sat and took breaks, (AR at 24 (citing AR at 261)); (6) she had a "hard time" paying attention and she could finish tasks "she started, but it would take a while," (*id.* (citing AR at 264)); (7) Plaintiff had problems with personal care, specifically, it took time to dress herself and needed for a chair while showering, (AR at 25 (citing AR at 260)); (8) her children "encouraged her to shower, so she could feel better," (*id.* (citing AR at 261)); (9) she adhered to a routine for taking her medication, she prepared food for herself, and assisted her family with preparing dinner, (*id.*); and (10) Plaintiff needed anti-depressants to handle stress, (AR at 25 (citing AR at 265));

- At the March 7, 2022, disability hearing, Plaintiff testified she managed her medications, spent time reading and watching television, at times babysat her seven-year-old granddaughter and they spent time coloring or watching television. (AR at 24); and

- Plaintiff also returned to school to obtain her GED, but withdrew due to physical limitations. (*Id.* (citing AR at 1048)).

Based on the foregoing, ALJ Panter concluded that Plaintiff had: (1) no limitations as to "understanding, remembering or applying information," (AR at 23); (2) a mild limitation pertaining to interacting with others, (*id.*); (3) a moderate limitation regarding "concentrating, persisting or maintaining pace," (*id.* at 24); and (4) no limitation for "adapting or managing oneself," (*id.* at 25).[8]

The ALJ also addressed various stressors that Plaintiff identified to medical providers that contributed to her mental impairments: (1) pain from her physical impairments; (2) ongoing legal issues pertaining to embezzlement charges from prior employment; (3) taking care of her elderly father who had Alzheimer's; (4) her daughter's medical concerns; and (5) financial stress on her family. (*See* AR at 27–38 (citing to medical records)).

ALJ Panter further determined Plaintiff's daily activities were inconsistent with

---

[8] Plaintiff does not dispute the ALJ's findings as to whether Plaintiff satisfied the criteria of "paragraph C" of the regulation. ALJ Panter concluded that although Dr. King treated Plaintiff for depression and anxiety, there was no significant change in Plaintiff's medication or other treatment modalities. Plaintiff also could sustain work activity over time because she did not suffer from any episodes of deterioration requiring hospitalization. (AR at 25). Plaintiff thus waived her right to appeal the ALJ's conclusion. *Anderson*, 422 F.3d at 1174, 1182 n.51.

8

debilitating limitations that would preclude past work based on the RFC. Plaintiff enrolled in four classes to obtain her high school diploma. (*Id.* at 33 (citing AR at 1112). Plaintiff testified she managed money, medication, and babysat her granddaughter "without serious interference from mental symptoms." (AR at 40).

ALJ Panter then detailed Plaintiff's medical history from approximately September 17, 2019, to January 12, 2022. (AR at 27–38). During this timeframe Plaintiff met with five treating and non-treating medical providers for her anxiety and depression. *Id.*

Next, ALJ Panter evaluated three medical source statements for their persuasiveness. She found unpersuasive the opinions of two state agency psychologists because the complete and longitudinal medical record was submitted after their review. (*Id.* at 39). She also determined Plaintiff's anxiety and depression were severe, Plaintiff participated in therapy, and she was prescribed medication "to treat symptoms of depression and anxiety." (*Id.* (citing medical records)). Nevertheless, in evaluating Plaintiff's treating psychologist, Dr. King's, opinion, she found his opinion "only slightly persuasive" limited to his opinion that Plaintiff had "some limitation in her ability to maintain attention and concentration." (*Id.* at 39–40). Dr. King opined Plaintiff had limitations in four areas of mental functioning. (*See id.* 39–40 (citing AR 924–28, 1040–1185)). Dr. King further opined Plaintiff would miss four or more days of work per month. (*Id.* at 40). ALJ Panter concluded Dr. King's opinion that Plaintiff's anxiety and depression increased with pain were consistent with Plaintiff's treatment records where her "mood improved when her pain decreased." (*Id.* at 40 (citing AR at 1049, 1072, 1097, 1113)). The ALJ, however, determined Dr. King's opinion was inconsistent with Plaintiff's daily activities and Plaintiff's mental status examinations, which were typically unremarkable. (*Id.* at 40).

Likewise, the ALJ found the longitudinal medical records did not support Plaintiff's subjective allegations. (*Id.*) Prior to January 2022, Plaintiff helped care for her elderly father and performed court-ordered community service. (AR at 40 (citing AR at 1136, 1144, 1160)). The record also showed Plaintiff's anxiety and depression improved with reduced pain. (*Id.* (citing Dr. King's medical records). Dr. King further concluded Plaintiff's "psychiatric condition exacerbated

her experience of pay [*sic*] or other physical symptoms. (*Id.* (citing 927–28 (noting "Pt's depression and anxiety are much worse with [] increased pain."). Plaintiff testified that her pain improved after undergoing bilateral hip replacement surgeries in January and February 2022. (*Id.* at 40). Plaintiff also purchased a walker and cane on her own.[9] (*Id.*). She, nevertheless, was not noted using an assistive device during her medical appointments. (*Id.*) Accordingly, ALJ Panter determined Plaintiff could work within the limitations in the RFC.

At step four, the ALJ found Plaintiff's past work as a Cash Accounting Clerk and Cashier/Checker was not precluded by her RFC. (*Id.* at 41). Hence, the ALJ was not required to proceed to step five. *See Thomas*, 540 U.S. at 24–25. ALJ Panter thus concluded Plaintiff was not disabled at any time from July 20, 2019, through the date of the decision. (*Id.* at 41).

## IV.   DISCUSSION

Plaintiff asserts ALJ Panter committed both legal and factual errors at step four when she found only slightly persuasive the medical opinion of Dr. King. (Doc. 18 at 6–12).[10] Specifically, the ALJ did not fully consider Dr. King's opinion that "establishes Plaintiff is disabled," or alternatively, the ALJ's RFC fails to take account for "greater mental limitations" per Dr. King's opinion. (*Id.* at 6–12). Defendant disputes each of these arguments. *See generally* doc. 24. For the reasons explained below, the Court agrees with Defendant.

### A.   The ALJ's Assessment of Dr. King's Opinions was Proper

ALJ Panter did not err in evaluating the persuasiveness of Dr. King's opinions in the manner alleged by Plaintiff. Because Plaintiff applied for disability benefits after March 27, 2017,

---

[9] ALJ Panter concedes Plaintiff's doctor prescribed a special walker following Plaintiff's January 2022 hip surgery. (AR at 40). The record, however, is void of any medical notes that Plaintiff required any type of assistive device over a 12-month period—prior to and after Plaintiff's 2022 hip surgeries. *Id.*

[10] In her Motion, Plaintiff also asserts that the ALJ failed to fully account for "Plaintiff's moderate limitations in concentrating, persisting, or maintaining pace and mild limitation in interacting with others in the RFC, resulting in a step 4 denial that is not supported by substantial evidence." (Doc. 18 at 1). Nonetheless, Plaintiff's Motion is void of any argument on this contention. (*See id.* at 2–12). The Court thus finds that Plaintiff waived this issue. *Anderson v. United States DOL*, 422 F.3d 1155, 1174, 1182 n.51. Moreover, Plaintiff's Motion focuses solely on her mental limitations and the opinion of treatment provider John King, Ph.D. (*See* doc. 18 at 5–12). Plaintiff does not challenge the ALJ's conclusions as to her physical impairments, *see* Doc. 18, and thus waived her right to appeal the ALJ's decision as to these conclusions, *Anderson*, 422 F.3d at 1174, 1182 n.51.

the ALJ was required to evaluate Dr. King's medical opinions under the revised regulation found in 20 C.F.R. § 404.1520c. *See Zhu v. Comm'r, SSA*, No. 20-3180, 2021 WL 2794533 at *4 & n.8 (10th Cir. July 6, 2021). Under 20 CFR § 404.1520c, the persuasiveness of a medical source's opinions depends on five factors: "supportability; consistency; relationship with the claimant; specialization; and other factors, such as 'a medical source's familiarity with the other evidence in a claim.'" *Zhu v. Comm'r, SSA*, No. 20-3180, 2021 WL 2794533, at *5 (10th Cir. 2021) (quoting, *inter alia*, 20 C.F.R. § 404.1520c(c)). Supportability and consistency are the only two factors that the ALJ must explain when assessing the persuasiveness of a medical source's opinions. *See* 20 C.F.R. § 404.1520c(b)(2). The factor of supportability "examines how closely connected a medical opinion is to the evidence and the medical source's explanations: 'The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions will be.'" *Zhu*, 2021 WL 2794533, at *5 (internal brackets and ellipsis omitted) (quoting, *inter alia*, 20 C.F.R. § 404.1520c(c)(1)). Consistency, by contrast, "compares a medical opinion to the evidence: 'The more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) will be.'" *Id.* (internal ellipsis omitted) (quoting, *inter alia*, 20 C.F.R. § 404.1520c(c)(2)).

When explaining her findings regarding the supportability and consistency of a medical source's opinions under § 404.1520c(b), the ALJ must provide enough detail such that the Court "can follow the adjudicator's reasoning" and determine whether the "correct legal standards have been applied." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012); *see also Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004) (finding that an ALJ's reasons for rejecting a medical opinion must be "sufficiently specific to enable [the] court to meaningfully review his findings") (internal quotations omitted). An ALJ may not make "global references to the record" without citing additional evidence. *Dwyer v. Saul*, Civ. No. 20-80 JFR, 2021 WL 1574965, at *11 (D.N.M. Apr. 22, 2021) (holding that the ALJ's "broad" statement that the medical opinion "[was] not consistent with the record" was insufficient). Indeed, although ALJs need not cite to specific

record evidence, they must "note[] the evidence upon which [they] relied, and that evidence [must be] specific, and verifiably supported by the record evidence." *See Victoria Jean G. v. Kijakazi*, CIVIL ACTION No. 20-4053-JWL, 2021 WL 4168124, at *5 (D. Kan. Sept. 14, 2021). Nonetheless, courts have affirmed "minimalist" supportability and consistency findings as long as the ALJ points to some evidence in such a way that the Court can follow the ALJ's reasoning. *Frank v. Kijakazi*, Civil Action No. 20-cv-00691-NYW, 2021 WL 3796620, at *6 (D. Colo. Aug. 25, 2021); *see also Cox v. Saul*, CIV 19-1117 KBM, 2020 WL 6701426, at *6 (D.N.M. Sep. 9, 2020) (holding that the ALJ sufficiently explained his supportability and consistency findings with the statement: "the moderate to marked limitations that [the doctor] opined overstate the severity of impairment to [Plaintiff's] abilities, are unsupported by the objective medical evidence and . . . [are] inconsistent with the evidence from all medical/nonmedical sources") (internal quotations omitted).

### i. The ALJ Provided Adequate Explanation for Her Supportability and Consistency Findings

Plaintiff's treating psychologist, Dr. King, treated Plaintiff approximately every four to eight weeks from March 10, 2020, to January 18, 2022. (AR at 24, 30–38). He found Plaintiff had marked limitations in all four areas of mental functioning, which the ALJ noted in her decision. For instance, Dr. King opined Plaintiff was "seriously limited, but not precluded" in unskilled, semi-skilled, and skilled work as follows:

- Remember work-like procedures;
- Understand, remember, and carry out very short and simple instructions;
- Work in coordination with or proximity to others without being unduly distracted;
- Make simple work-related decisions;
- Accept instructions and respond appropriately to criticism from peers;
- Get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes;
- Responding appropriately to changes in a routine work setting;
- Be aware of normal hazards and take appropriate precautions;
- Deal with normal work stress;
- Ask simple questions or request assistance;
- Understand, remember and carry out detailed instructions;
- Interact appropriately with the public;
- Maintain socially appropriate behavior; and
- Adhere to basic standards of neatness and cleanliness.

(AR at 36 (citing AR at 926–27)). Dr. King further opined Plaintiff was "unable to meet competitive standards" in unskilled, semi-skilled, and skilled work as follows:

- Maintaining attention for a two-hour segment;
- Maintain regular attendance and be punctual within customary, usually strict tolerances;
- Sustain an ordinary routine without special supervision;
- Complete a workday and workweek without interruptions from psychologically based symptoms;
- Perform at a consistent pace without an unreasonable number and length of rest periods;
- Set realistic goals or make plans independently of others, or deal with stress of semi-skilled and skilled work; and
- Travel in unfamiliar places and using public transportation.

(*Id.*)

The ALJ found Dr. King's opinion to be "only slightly persuasive" with respect to "some limitation in [Plaintiff's] ability to maintain attention and concentration." (*Id.* at 39–40). The ALJ concluded Dr. King's opinion was inconsistent with the medical records for several reasons. First, Dr. King's records indicated Plaintiff's mental conditions were worse with increased pain associated with her hips. (*Id.* at 40). Second, Plaintiff generally exhibited normal examination findings at her medical appointments. (*Id.*) Third, Plaintiff's daily activities demonstrated her ability to manage and participate in activities without serious interference from her mental symptoms. (*Id.*) Plaintiff contends this assessment is deficient for three reasons: (i) the ALJ failed to explain why Dr. King's opinions did not support greater mental limitations prior to Plaintiff's 2022 bilateral hip surgeries, the ALJ erroneously concludes Plaintiff's mental limitations resolved post-surgery, and the ALJ improperly concluded Plaintiff's physical pain was the only cause of her mental limitations; (ii) the ALJ improperly selected benign mental findings and failed to consider that her mental impairments waxed and waned; and (iii) ALJ Panter misstated and inappropriately selected daily activities in support of her own conclusion.

      a.    **Substantial Evidence Supports the ALJ's Finding as to Plaintiff's Mental Limitations**

Starting with the first alleged deficiency, the Court disagrees with Plaintiff's reading of the ALJ's assessment. In determining the degree of Plaintiff's mental limitations, ALJ Panter

13

considered Dr. King's records and findings spanning from March 2020 to January 2022. *See* AR at 23–24 (citing AR at 924, 1048–49, 1064–65, 1072–73, 1080–81, 1096–97, 1112–13, 1120–21, 1144–45, 1152–53, 1160–61, 1184–85); *see also* AR at 30–38. The ALJ also addressed Plaintiff's medical records with other treating and non-treating providers. (AR at 27–38 (citing to medical records)). The ALJ concluded Plaintiff's subjective statements to Dr. King and the internal/external inconsistency with the generally unremarkable objective mental findings in medical records *prior to* January 2022 did not support greater limitations. *See* AR at 23–24 (citing AR at 924, 1048–49, 1064–65, 1072–73, 1080–81, 1096–97, 1112–13, 1120–21, 1144–45, 1152–53, 1160–61, 1184–85); *see also* AR at 27–38. The ALJ also discussed Plaintiff's subjective statements to the medical providers pertaining to alternative stressors for her symptoms and the impact on the persuasiveness of Dr. King's opinion. *See* AR at 23–24 , 27–38. Further, an extensive review of the ALJ's decision demonstrates ALJ Panter did *not conclude* Plaintiff's limitations resolved post-surgery. (*See* AR at 38 (Plaintiff stated continued symptoms and stressors during clinical interview)).

ALJ Panter's reliance on the preceding subjective statements was also proper. The supportability factor provides that the persuasiveness of a medical source's opinion is a product of the extent to which the source provides objective (rather than subjective) medical evidence in support of the opinion. *See* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be"). Here, Dr. King opined about Plaintiff's marked limitations without explaining why he reached those conclusions. *See* AR at 926–27 (Dr. King's Mental Residual Functional Capacity Questionnaire, dated July 19, 2021, states the medical/clinical findings that support his assessment of marked limitations are: "Due to patient's depression and anxiety, she cannot perform typical job duties;" "Due to patient's depression and anxiety, she cannot perform semi [*sic*] skilled or skilled work;" and "Due to patient's depression and anxiety, she cannot perform these job duties."). In the absence of any explanation for these opinions, the ALJ properly determined Dr. King lacked

evidentiary support for his opined limitations.

### b. The ALJ Did Not Err in Determining Dr. King's Findings were Inconsistent with the Objective Medical Record

Turning to the second alleged deficiency, the Court finds the ALJ did not err by concluding Dr. King's opinions were inconsistent with otherwise generally unremarkable objective findings in the medical notes. The ALJ discussed that Plaintiff, at times, had a depressed and anxious mood. (*See generally* AR at 22–25, 27–40). However, the ALJ cited extensive records that showed normal mental status examinations. (*Id.*) Plaintiff concedes that these normal examination findings are in the record, *see* doc. 18 at 11, but argues that the "record also regularly reflects abnormal findings," doc. 25 at 2. Plaintiff is correct to note that the ALJ must consider all the evidence—not just the objective mental examinations—when assessing the consistency of a medical source's opinions with the record. *See* 20 C.F.R. §§ 404.1520c, 416.920c (requiring the ALJ to assess the consistency of a source's medical opinions "with the evidence from other medical sources and nonmedical sources"); 20 C.F.R. § 404.1545(a)(3) (requiring the ALJ to base the RFC "on all of the relevant medical and other evidence"). However, there is no indication that the ALJ did not do so here. The ALJ found Dr. King's opinions inconsistent with the overall medical evidence as acknowledged throughout her decision. (*See* AR at 23–25, 27–38, 40). This Court cannot reweigh the evidence, which is what Plaintiff is asking the Court to do. The ALJ applied the correct legal standard here and made a decision that was supported by substantial evidence in the record. The mere fact that there is evidence which might support a contrary conclusion is not sufficient to show error on the part of ALJ Panter. *Scrivner v. Berryhill*, 323 F.R.D. 663, 665–66 (D.N.M. January 11, 2018); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) ("We consider whether the ALJ followed the 'specific rules of law that must be followed in weighing particular types of evidence in disability cases,' "but we will not reweigh the evidence or substitute our judgment for the Commissioner's.")

As for possible fluctuation in Plaintiff's symptoms, it "is correct that mental impairments often wax and wane and that a claimant need not show that the impairment is continuously disabling in order to succeed in [her] claim of disability." *See Roberts-Jewett v. Astrue*, Civil

Action No. 11-1066-JWL, 2012 U.S. Dist. LEXIS 55478, 2012 WL 1388733, at *4 (D. Kan. Apr. 20, 2012) (citing *Freemyer v. Sullivan*, 723 F. Supp. 1417, 1420 (D. Kan. 1989)). The ALJ, though, did not ignore evidence of oscillating severity in Plaintiff's symptoms. As noted earlier, she acknowledged Plaintiff had abnormal mental findings—throughout her medical history—before she concluded that the record as a whole contained generally normal examinations. This thorough analysis discharged ALJ Panter's obligation to account for swings in the severity of Plaintiff's impairments. *See K.S. v. Saul*, Case No. 20-1253-JWB, 2021 U.S. Dist. LEXIS 106959, 2021 WL 2338250, at *5 (D. Kan. June 8, 2021).

Moreover, the record in this case regarding the waxing and waning of symptoms is not comparable to the authority cited by Plaintiff. (*See* doc. 18 at 11 (citing *Williams v. Kijakazi*, No. 21-691 JFR, 2022 U.S. Dist. LEXIS 132287, at *31 (D.N.M. July 26, 2022); *Bradley v. Berryhill*, 2018 U.S. Dist. LEXIS 199542, at *30–31 (D. Colo. 2018) (citing *Escareno v. Colvin*, 2014 U.S. Dist. LEXIS 59161, 2014 WL 1689940, at *6 (D. Colo. 2014)).). In *Williams*, the Court found the ALJ failed to consider claimant's symptoms "and the longitudinal record by referencing a handful of 'generally normal' objective findings" to discount the doctor's opinion. 2022 U.S. Dist. LEXIS 132287, at *31 (D.N.M. July 26, 2022). Notably, in *Williams*, the ALJ disregarded and failed to discuss extensive abnormal findings in the medical record which supported a finding that the physical impairments waxed and waned. *Id.* at *28–29. That is not the case here. The ALJ addressed the fact that there were some records showing Plaintiff did have days with a depressed and anxious mood; however, the ALJ did not find that the medical records, in their entirety, supported a disabling impairment. (AR at 23–25, 27–38).

*Bradley* is also distinguishable. In *Bradley*, the Court found the ALJ failed to adequately articulate how the claimant's daily activities and the medical record contradicted the claimant's described symptoms. 2018 U.S. Dist. LEXIS 199542, at *31–32. Here, the ALJ detailed Plaintiff's daily activities articulated in her Adult Function Report, subjective statements to medical providers, and testimony at the March 7, 2022, disability hearing. (AR at 23–25, 27–38). ALJ Panter then stated why she found Plaintiff's statements concerning the intensity, persistence and

limiting effects of her symptoms not entirely consistent with the longitudinal record. AR at 23–25, 27–38, 40). The ALJ's findings are supported by substantial evidence and this Court cannot reweigh that evidence. *See Lax*, 489 F.3d 1080 at 1084.

### c. The ALJ's Reliance on Daily Activities was Proper

As for the final alleged deficiency, the ALJ did not err in assessing Plaintiff's limitations and credibility based on her daily activities.[11] An ALJ may properly rely on contradictory activities of daily living and other objective indicia such as recommendations for exercise and relief from medication. See *Tarpley v. Colvin*, 601 F. App'x 641, 644 (10th Cir. 2015); *Romero v. Colvin*, 563 F. App'x 618, 621 (10th Cir. 2014).

In this case, ALJ Panter examined Plaintiff's activities of daily living and concluded "the nature, scope, and findings from the longitudinal treatment records do not support the intensity or persistence of her subjective allegations." (AR at 40). The ALJ observed, for example, that Plaintiff's Adult Function Report detailed numerous daily activities. For instance, Plaintiff could pay her bills, count change, use a checkbook/money orders, and handle a savings account. (AR at 23 (citing AR at 262)). Despite not getting out much, Plaintiff would sit on her porch daily, drive a car, ride in a car, go out alone, spend time with her family daily and spoke to her sister on the phone two to three times per week, (*Id.* (citing AR at 262–63)). Plaintiff further stated she could conduct some household chores (make the bed, do dishes, and laundry) if she sat and took breaks. (AR at 24 (citing AR at 261).

During clinical interviews, and at the March 7, 2022, disability hearing, she stated she took care of her elderly father, (*see* AR at 40, 74), and performed court-ordered community service,

---

[11] Throughout her Motion, Plaintiff intimates the ALJ substituted her judgment of Dr. King's medical data pertaining to Plaintiff's subjective statements. *See generally* doc. 18. It is well-established that an ALJ, "in determining *what weight to assign an opinion*, may consider that the opinion is based on subjective information provided by the claimant." *Ellvinger v. Saul*, No. 1:19-CV-00385-KRS, 2020 U.S. Dist. LEXIS 200321, 2020 WL 6286359, at *5 (D.N.M. Oct. 27, 2020) (quoting *Houston v. Colvin*, 180 F.Supp.3d 877, 888 (D.N.M. 2016)) (emphasis in original). "Although the ALJ cannot substitute his judgment for that of a psychiatrist, the Tenth Circuit has not forbidden an ALJ from considering information unavailable to the psychiatrist that discredits the subjective statements on which the psychiatrist relied." *Id.* For these reasons, the Court finds the ALJ properly noted Plaintiff's subjective statements in determining the persuasiveness of Dr. King's opinions.

(*see* AR at 40 (citing AR at 1136, 1144, 1160)). Plaintiff, at one point, returned to school and was taking four classes towards a high school diploma, but withdrew due to physical limitations. (*Id.* at 24 (citing AR at 1048); AR at 33 (citing AR at 1112); AR at 66). At the March 7, 2022, disability hearing, Plaintiff testified she managed her medications, (AR at 61), spent time reading and watching television, (AR at 67), and at times babysat her seven-year-old granddaughter and they spent time coloring or watching television, (AR at 74). In September 2019, CNP Mondragon encouraged Plaintiff "to exercise and walk daily." (AR at 18). Plaintiff also testified that she attended physical therapy post-surgery and completes physical therapy exercises at home. (AR at 27). Finally, the ALJ noted that Plaintiff reported to CNP Mondragon on January 12, 2021, that she was doing well with medication and therapy with respect to her anxiety and depression. (AR at 33–32). ALJ Panter was permitted to draw reasonable inferences about the circumstances of Plaintiff's daily activities. *Harlan v. Apfel*, 2000 U.S. App. LEXIS 33459, *4 (10th Cir. 2000). An ALJ may reasonably deduce the level of attention, concentration, and focus necessary to pay bills, drive a car, participate in social conversations, conduct some household chores with breaks, and sometimes babysit a seven-year-old granddaughter. Based on the foregoing, the Court concludes the ALJ did not err in assessing Plaintiff's daily activities to determine her ability to work.

      The ALJ's assessment of Dr. King's opinion is thus legally sufficient because she provides enough specific evidence for the Court to review her findings. *See Victoria Jean G.*, 2021 WL 4168124, at *5; *cf. Langley*, 373 F.3d at 1119 (assessing an ALJ's evaluation of a medical source opinion under the Treating Physician Rule). The ALJ noted that she considered Dr. King's findings of marked limitations and an inability to complete a normal work schedule in evaluating the consistency and supportability of the medical opinion. (AR at 27–38.) This evidence provides enough specificity such that the Court can follow the ALJ's logic and assess both the consistency of Dr. King's opinion (whether other medical opinions in the record do or do not find marked limitations and an inability to complete a normal work schedule) and the supportability of Dr. King's opinion (whether Dr. King's own medical findings support marked limitations and an inability to complete a normal work schedule). Hence, after careful review of the record, the Court

18

finds that the ALJ's findings about the supportability and consistency of Dr. King's medical opinions are supported by substantial evidence.

### B. The ALJ Did Not Err at Step Four

Finally, Plaintiff argues that the ALJ's step four conclusion—that she retains the ability to return to previous work as an accounting clerk and cashier/checker—is unsupported by substantial evidence because the ALJ omitted mental limitations identified by Dr. King in her RFC finding and hypothetical questions to the VE. (*See* Doc. 18 at 7–8). Having reviewed ALJ Panter's step four analysis, the Court disagrees.

As noted above, the ALJ's rejection of Dr. King's opined limitations on Plaintiff's mental abilities, and her resulting RFC finding, are supported by substantial evidence. As such, the Court disagrees with Plaintiff's contention that the ALJ erred at step two because she ignored an additional 20+ mental limitations. Rather, as the Commissioner correctly argues, ALJ Panter "was only required to include those work-related limitations she deemed to be properly supported by the evidence of record." (Doc. 24 at 14 (citing *Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000); *Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995) ("The ALJ was not required to accept the answer to a hypothetical question that included limitations claimed by plaintiff but not accepted by the ALJ as supported by the record.")). Therefore, because ALJ Panter rejected Dr. King's opinion when formulating Plaintiff's RFC, she was under no duty to compare the mental limitations identified by Dr. King with the requirements of an accounting clerk and cashier/checker. Instead, ALJ Panter did what was required at step four by: formulating Plaintiff's RFC (phase 1); examining the demands of an accounting clerk and cashier/checker position by reference to the Dictionary of Occupational Titles and the VE's testimony (phase 2); and determining that Plaintiff retains the ability to meet those demands despite the limitations placed on her RFC by reference to Plaintiff's work history and the VE's testimony (phase 3). (*See* AR at 20–41.) In other words, the ALJ's step four conclusion is supported by substantial evidence and free from legal error.

### V. CONCLUSION

Plaintiff has failed to convince this Court that the Commissioner's final decision to deny her Social Security benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–34 was tainted by legal error or unsupported by substantial evidence. Wherefore, **IT IS THEREFORE ORDERED** that Plaintiff's Motion for Reversal and Remand for further Proceedings (Doc. 17), is **DENIED** and the decision of the Commissioner is **AFFIRMED**. A final judgment under Rule 58 will be entered concurrently with this Memorandum Opinion and Order.

_____
**KEVIN R. SWEAZEA**
**UNITED STATES MAGISTRATE JUDGE**